THOMAS W. KIELTY (SB No. 164186)
4640 Admiralty Way, Suite 500
Marina Del Rey, CA 90292-6636
Telephone (310) 393-0515
Cell phone (310) 621-7928
Facsimile (310) 626-8521
tomkielty@earthlink.net

Attorney for Plaintiffs,

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY FIELDS-CAMPBELL, individually and on behalf of a putative class of similarly-situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO, N.A., <br> Defendant. | CASE NO. <br><br> COMPLAINT FOR EQUITABLE RELIEF, INJUNCTIVE RELIEF, COMPENSATORY DAMAGES, & ATTORNEY'S FEES for: <br><br> 1. Violations of Title VII's Prohibition Against Disparate Impact Discrimination <br><br> 2. Violations of Title VII's Prohibition Against Disparate Treatment Discrimination <br><br> DEMAND FOR JURY TRIAL |

## JURISDICTION AND VENUE

1. Plaintiff LeRoy Fields-Campbell seeks compensatory, injunctive, and equitable relief pursuant to Title VII of the Civil Rights Act of 1964 as amended. Accordingly, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

2. Venue is proper under 28 U.S.C. § 1391(b)(1) due to the fact that Defendant Wells Fargo is subject to this court's personal jurisdiction because of its business locations throughout Los Angeles County, including its location on 333 S. Grand Ave., Los Angeles, California, 90071 where Mr. Fields-Campbell reported to on numerous occasions while working as Wells Fargo's Regional Nonprofit Relationship Manager for the California Region.

## INTRODUCTION

3. An employer's policy or practice of using applicants' or employees' criminal histories to make personnel decisions violates the prohibition against employment discrimination under Title VII of the Civil Rights Act of 1964 (Title VII) if the policy or practice has a disproportionate effect against minorities and is not job-related and consistent with business necessity.

4. Employers also violate Title VII if they treat criminal history information differently for different applicants or employees based on their protected status.

5. This action challenges Wells Fargo's violations of Title VII stemming from its use of a criminal background check policy.

6. This action also challenges Wells Fargo's violations of Title VII due to its practice of treating criminal history information differently for different applicants/employees based on their protected status.

7. Wells Fargo's use of its background check policy was not restricted to its employees who worked in California – Wells Fargo implemented this policy at its locations throughout the United States.

## THE PARTIES

8. Mr. Fields seeks to represent a putative class of African American and Hispanic employees and applicants who were negatively and disproportionately affected by Wells Fargo's use of non-job-related criminal history screenings.

9. Plaintiff LeRoy Fields-Campbell is a resident of Texas who worked for Wells Fargo as a Regional Nonprofit Relationship Manager for the California Region.

10. When working as Wells Fargo's Regional Nonprofit Relationship Manager for the California Region, Mr. Fields-Campbell spent approximately 85% of his working hours in California, even though he resided in Texas.

11. When working for Wells Fargo in California, Mr. Fields-Campbell often reported to Wells Fargo's office on 333 S. Grand Ave. in Los Angeles.

12. Wells Fargo is a federally chartered national banking organization that is organized and exists under the National Banking Act, doing business in Los Angeles, California, with its home office located in South Dakota.

13. The acts of which Plaintiffs complain occurred at Wells Fargo locations throughout the United States.

14. This putative class action is an action for declaratory and injunctive relief, monetary and compensatory damages, and all such other relief that may be granted pursuant to Title VII.

**PROCEDURAL REQUIREMENTS**

15. Prior to filing this action, Mr. Fields-Campbell filed charges of employment discrimination on the basis of race with the Equal Employment Opportunity Commission.

16. Within 90 days of Mr. Fields-Campbell's receipt of the EEOC's right-to-sue notice with regards to his claims, Mr. Fields-Campbell filed this complaint.

**SUMMARY OF FACTS**

17. Plaintiff LeRoy Fields-Campbell is an African American male.

18. In 2001, Mr. Fields-Campbell was convicted of theft for a $20 bad check issued in an attempt to pay a water bill for his mother.

19. Years passed by, and Mr. Fields-Campbell was never convicted of any other crimes.

20. Mr. Fields-Campbell started working for Wells Fargo in 2000.

21. Throughout his tenure at Wells Fargo, Mr. Fields-Campbell received positive performance evaluations for his workplace integrity and honesty.

22. In early 2012, Mr. Fields-Campbell received a notification from Wells Fargo informing him that he and his team needed to participate in a criminal background check in order to continue employment with Wells Fargo.

23. Unbeknownst to Mr. Fields-Campbell and his team, Wells Fargo was implementing a criminal background check policy where the bank intended to fire any employee who was ever convicted of a crime of dishonesty – no matter how long ago a conviction took place.

24. Specifically, Wells Fargo's policy/practice was to fire or exclude from employment any employee or applicant who was convicted of a criminal offense covered by 12 U.S.C. § 1829(a)(1) (commonly referred to as "Section 19" of the Federal Deposit Insurance Act) who did not meet the FDIC's de minimis criteria.

25. Wells Fargo did not notify its employees or applicants of this policy.

26. Wells Fargo did not notify its employees or applicants that the bank had the opportunity to engage in the lesser discriminatory alternative practice of obtaining written consent from the FDIC (Section 19 waivers) that would have allowed individuals like Mr. Fields-Campbell to return to work without the need for permanent termination.

Complaint; Demand for Jury Trial

4

27. Wells Fargo knew or should have known that its background check policy would have a disproportionate and adverse impact on its African American and Hispanic employees and applicants.

28. On May 7, 2012, Wells Fargo fired Mr. Fields-Campbell pursuant to the company's criminal background check policy.

29. During his termination meeting, Wells Fargo never told Mr. Fields-Campbell that it could engage in the lesser discriminatory alternative practice of sponsoring his Section 19 waiver in order to obtain the FDIC's permission to continue his employment.

30. During his termination meeting, Wells Fargo never informed Mr. Fields-Campbell that he had an opportunity to pursue a waiver that would have made it possible for him to continue working for Wells Fargo.

31. Wells Fargo treated Mr. Fields-Campbell less favorably than employees who happened to be white who were subjected to Wells Fargo's criminal background screening policy.

32. Some employees who happened to be white were told how to obtain waivers from the FDIC prior to their terminations. Mr. Fields-Campbell, however, was treated differently.

33. Some employees who happened to be white were terminated months after the completion of their criminal background check. Mr. Fields-Campbell, however, was treated differently.

Complaint; Demand for Jury Trial

5

34. Some employees who happened to be white received instructions on how to obtain an exemption from the FDIC that would make them eligible for reemployment during their termination meetings. Mr. Fields-Campbell, however, was treated differently.

35. Some employees who happened to be white were promised that they could return to work and retain their seniority if they received Section 19 waiver from the FDIC within six months of their suspension. Mr. Fields-Campbell, however, was treated differently.

36. Prior to Mr. Fields-Campbell's termination, Wells Fargo knew that its practice of permanently firing employees with Section 19 convictions was not a necessity because all of its employees had the opportunity to obtain Section 19 waivers.

37. Prior to Mr. Fields-Campbell's termination, Wells Fargo knew that its employees' and applicants' criminal convictions that occurred in the distant past were not indicative of whether those employees and applicants could perform their jobs without committing banking-related crimes.

38. Electing to sponsor waivers on behalf of employees and applicants like Mr. Fields-Campbell and electing to tell employees and applicants like Mr. Fields-Campbell about how they could pursue waivers prior to their termination are alternative practices that would have had less of an adverse impact on protected classes of employees.

39. Offering paid or unpaid suspensions of up to six months for employees like Mr. Fields-Campbell to obtain Section 19 waivers was an alternative practice that would have had less of an adverse impact on protected classes of employees.

40. Social science supports the fact that African Americans and Hispanics are disproportionately affected by background screening policies that have no temporal limitation.

## FIRST CAUSE OF ACTION

## TITLE VII DISPARATE IMPACT DISCRIMINATION

41. Plaintiff repleads all other paragraphs provided in this Complaint and incorporates the same by reference as if fully set forth herein.

42. Wells Fargo's background check policy has the effect of disproportionately screening out African American and Hispanic applicants and employees.

43. Statistical analysis derived from an examination of Wells Fargo's applicant data, workforce data, and third party criminal background screening data will show that African Americans and Hispanics were disproportionately affected by Wells Fargo's use of criminal history screenings.

44. Wells Fargo's criminal background check policy is not job-related to many positions held by the bank's employees.

45. No substantive link exists between the Plaintiffs' past crimes and the risks inherent in the job duties held by Wells Fargo employees.

46. Wells Fargo's background check policy was not a business necessity because Wells Fargo had the option of obtaining waivers for its applicants and employees.

47. Wells Fargo could have implemented less discriminatory alternative employment practices that served its legitimate goals as effectively as its criminal history screenings, but Wells Fargo refused to adopt those practices.

48. The named Plaintiff seeks to represent a putative class of African American and Hispanic applicants and employees who were affected by Wells Fargo's use of criminal background screenings for the purposes of compliance with 12 U.S.C. § 1829(a)(1).

49. Wells Fargo used its criminal background screenings related to Section 19 compliance at its facilities located throughout the United States.

50. Wells Fargo did not violate Title VII merely by its efforts to comply with Section 19 – rather, Wells Fargo violated Title VII because it refused to adopt lesser discriminatory alternative employment practices that were compliant with Section 19, such as waiver sponsorship, suspension, and notice.

51. As a proximate result of Defendant's acts and omissions, the named Plaintiff and the putative class he seeks to represent have in the past and will in the future suffer damages including, but not limited to, mental and emotional distress,

fear, anguish, humiliation, intimidation, insecurity, embarrassment, lost enjoyment of life, lost wages, benefits, future earnings, punitive damage, and other emoluments of employment.

52. In addition, the named Plaintiff and the putative class he seeks to represent are entitled to equitable relief including but not limited to: 1) benefits not measured as compensatory damages, including relief to offset any damage to their reputations, 2) injunctive relief prohibiting Defendant Wells Fargo from subjecting future applicants to discriminatory criminal history screenings, 3) injunctive relief requiring Wells Fargo to hire applicants and former employees who were screened out of the company's hiring process due to criminal background screenings, and 4) other forms of equitable relief available under Title VII.

## SECOND CAUSE OF ACTION

## TITLE VII DISPARATE TREATMENT DISCRIMINATION

53. Plaintiff repleads all other paragraphs provided in this Complaint and incorporates the same by reference as if fully set forth herein.

54. Prior to its implementation, Wells Fargo knew that its background check policy would result in the termination of a disproportionate number of protected-class individuals, including African American and Hispanic employees.

55. An audit of Wells Fargo's past practices regarding its use of criminal background checks will reveal inconsistencies showing that Wells Fargo was more

likely to give white applicants and employees an avenue to circumvent Wells Fargo's background check policies than minority applicants and employees.

56. Wells Fargo's usual, rather than unusual, practice (its standard operating procedure) was to give decision-makers discretion in regards to whether they could waive or delay their background screening policy for certain employees and applicants.

57. Wells Fargo's use of that discretion disproportionately affected minority applicants and employees.

58. Wells Fargo's use of that discretion resulted in employees who happened to be white being treated more favorably than employees who happened to be minorities.

59. Statistical analysis derived from an examination of Wells Fargo's applicant data, workforce data, and third party criminal background history data will show that Wells Fargo's use of discretion in the criminal background screening process weighed more heavily against minority workers.

60. In addition to individual treatment claims, the named Plaintiff seeks to represent a putative class of minorities affected by Wells Fargo's pattern-or-practice of allowing hiring supervisors to exercise discretion in their use of criminal background screenings in the hiring process.

61. While the exact number of putative class members is unknown because such information is in the exclusive control Wells Fargo, upon information

and belief there are hundreds, if not thousands, of applicants and former employees who have been the victim of an adverse employment decision taken by Wells Fargo in violation of Title VII because of their Section 19 convictions.

62. The claims alleged on behalf of the named plaintiffs raise questions of law and fact common to the putative class.

63. Chief among these questions is whether Wells Fargo had a policy and practice of unlawfully refusing to employ the named plaintiffs and the putative class members in violation of Title VII because they have been convicted of a crime where there is no direct relationship between the crime and employment.

64. As a proximate result of Wells Fargo's acts and omissions, the named Plaintiff and the putative class he seeks to represent have in the past and will in the future suffer damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, intimidation, insecurity, embarrassment, lost enjoyment of life, lost wages, benefits, future earnings, and other emoluments of employment.

65. In addition, the named Plaintiff and the putative class they seek to represent are entitled to equitable relief including but not limited to: 1) benefits not measured as compensatory damages, including relief to offset any damage to their reputations, 2) injunctive relief prohibiting Wells Fargo from subjecting future applicants and employees to discriminatory criminal history screenings, 3) injunctive relief requiring Wells Fargo to hire applicants and employees who were

adversely affected by Wells Fargo's criminal background screenings, and 4) other forms of equitable relief available under Title VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the putative class he seeks to represent request the following relief against Wells Fargo:

1. Declaring that Wells Fargo violated Title VII's prohibition against disparate impact discrimination with respect to the facts summarized above;

2. Declaring the Wells Fargo violated Title VII's prohibition against disparate treatment discrimination with respect to the facts summarized above;

3. Certifying a class or subclasses of African American and Hispanic employees and applicants who were subjected to the unlawful practices summarized above;

4. Granting Plaintiff and the putative class an injunction or equitable relief that prohibits Wells Fargo from refusing to adopt the lesser discriminatory alternative practices summarized above;

5. Awarding Plaintiff and the putative class with full and fair compensation for their injuries and damages, for punitive damages in an amount sufficient to punish Wells Fargo and deter others, for interest as allowed by law, for attorneys' fees, for the costs of this action, for appropriate equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII.

Dated:  October 22, 2015

                                        Respectfully submitted,

                                        */s/Thomas W. Kielty*
                                        THOMAS W. KIELTY
                                        Attorney for FIELDS-CAMPBELL

## **DEMAND FOR JURY TRIAL**

FIELDS-CAMPBELL hereby demands a trial by jury.

                                        Respectfully submitted,

Dated: <u>October 22, 2015</u>                  */s/Thomas W. Kielty*
                                        THOMAS W. KIELTY
                                        Attorney for FIELDS-CAMPBELL

THOMAS W. KIELTY, ATTORNEY AT LAW
4640 ADMIRALTY WAY, SUITE 500
MARINA DEL REY, CA 90292-6636
OFFICE (310) 393-0515